UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3234(DSD/HB)

Podiatric OR of Midtown
Manhattan, P.C.,

        Plaintiff,

v.                                                    **ORDER**

UnitedHealth Group, Inc.,
United HealthCare Services,
Inc., United HealthCare
Insurance Company, United
HealthCare Service LLC,
Oxford Health Plans, LLC,
Optum , Inc. and
Optum Group, LLC,

        Defendants.

---

Cyril V. Smith, Esq. and Zuckerman Spaeder LLP, 100 East Pratt Street, Suite 2440, Baltimore, MD 21202; Karen H. Riebel, Esq., Kate M. Baxter-Kauf, Esq. and Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, counsel for plaintiff.

Aaron D. Van Oort, Esq., Deborah A. Ellingboe, Esq. and Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, counsel for defendants.

---

This matter is before the court upon the motion to dismiss by defendants.[1]   Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

---

[1]   Defendants include UnitedHealth Group, Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, United Healthcare Service, LLC, Oxford Health Plans, LLC, Optum, Inc., and Optum Group, LLC (collectively, United).

**BACKGROUND**

This insurance benefit dispute arises out of United's denial of claims for facility fees submitted by plaintiff Podiatric OR of Midtown Manhattan, PC.   United is the claims administrator for various employer-sponsored health insurance plans (the Plans) governed by the Employee Retirement Income Security Act of 1974 (ERISA).   Compl. ¶¶ 3, 5.   Podiatric is an out-of-network healthcare provider with an office-based surgery (OBS) facility that is accredited under New York law.   Id. ¶¶ 13, 35.   Podiatric regularly treats patients insured by the Plans, submits claims directly to United, and receives payments directly from United. Id. ¶¶ 13, 60-62.   If United has questions about a claim or a dispute arises, it deals directly with Podiatric.   Id. ¶ 64.

United decides whether an insured's treatment is covered by the Plan (Covered Service).   Id. ¶ 3.   If the treatment is a Covered Service, United pays benefits out of the employer-sponsored Plan.   Id. ¶¶ 3, 6.   All Plans define Covered Services to include outpatient surgery, and provide benefits for both (1) the surgeon's fee, and (2) the facility fee.[2]   Id. ¶ 7.   Until recently, United paid facility fees regardless of whether the surgery took place in an OBS facility or a hospital.   Id. ¶¶ 8, 32.

---

[2]   The surgeon's fee is the expense associated with the surgeon's time and expertise. Compl. ¶ 7. The facility fee is the expense associated with the facility in which the surgery was performed.   Id.

More recently, however, United has refused to pay OBS facility fees.  Id. ¶ 33.  On August 11, 2014, and December 17, 2014, United sent two letters to Podiatric stating that it would no longer pay OBS facility fees.  Id. ¶¶ 48-49.  In the first letter, United stated, "As a non-participating [out-of-network] physician office with an OBS accreditation, UnitedHealth Group will not reimburse facility fees.  This letter is sent as notice that any future claims for facility ... charges will not be paid."  Id. ¶ 48; id. Ex. E.  United's second letter reiterated that unless the provider has a "license to operate as an Ambulatory Surgery Center, facility fees will not be paid."  Id. ¶ 49; id. Ex. F.  The letters also stated that insureds may appeal that determination or designate an authorized representative to do so.  Id. Exs. E and F.  Each letter outlined the appeal process in detail.  Id.

On August 16, 2014, Podiatric performed surgery on Patient A – an insured under a Plan sponsored by Byram Healthcare Center, Inc. (Byram Plan) – at Podiatric's OBS facility.  Id. ¶ 35.  Patient A executed documents that named Podiatric as her authorized representative and attorney-in-fact, and assigned to Podiatric all of her rights, claims, and other interests – including the right to file an ERISA suit – related to the care provided by Podiatric. Id. ¶ 36.  Podiatric submitted an insurance claim to United for Patient A's surgery.  Compl. ¶ 38.  On November 3, 2014, United denied Podiatric's claim for facility fees.  Id. ¶ 40; id. Ex B.

3

Similarly, on October 17, 2014, and January 9, 2015, Patient B - an insured under a Plan sponsored by Diageo North America (Diageo Plan) - underwent two surgeries at Podiatric's OBS facility.  Id. ¶ 41-42.  Patient B executed documents identical to those signed by Patient A, and Podiatric submitted insurance claims to United for Patient B's surgeries.  Id. ¶¶ 41-42, 44.  On December 9, 2014, and March 10, 2015, United denied Podiatric's claims for facility fees.  Compl. ¶¶ 46-47; id. Exs. C and D.

On April 6, 2015, United sent a letter to Podiatric regarding Patients A and B, stating that "unless [Podiatric has] a license to operate as an Ambulatory Surgery Center, facility fees will not be paid." Id. ¶ 50; id. Ex. G.  The letter also included instructions about how to appeal that decision.

On August 7, 2015, Podiatric filed a putative class action complaint, seeking benefits under 29 U.S.C. § 1132(a)(1)(B), and injunctive relief under § 1132(a)(1)(B) or, alternatively, § 1132(a)(3).  United now moves to dismiss.

## DISCUSSION

### I.   Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)

4

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court may consider materials "that are part of the public record," Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and matters "necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003). Here, the court considers the Byram Plan, the Diageo Plan, and the letters sent from United to Podiatric.

## II. Standing

United argues that Podiatric lacks standing to sue because the Plans contain non-assignment clauses which prohibit Podiatric from obtaining the rights to the insureds' benefits. The Byram Plan

states:

> You may not assign your Benefits[3] under the Policy to a non-Network provider without our consent. When an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill. We may, however, pay a non-Network provider directly for services rendered to you.

Defs.' Ex. A, at 43.  The Diageo Plan states:

> Assignment of Benefits.  The benefit plans summarized in this SPD [which includes the medical plan] are used exclusively to provide benefits to you and your eligible dependents. Neither you nor Diageo NA can assign, transfer, or attach your benefits, except as described below [to assign pension or 401(k) benefits after separation from a spouse].

Defs.' Ex. B, at 184.  Podiatric argues that United waived the non-assignment clauses by routinely correspondening with and directing payments to Podiatric.  Podiatric also argues that the clauses do not prohibit it from obtaining the rights to any cause of action arising after the denial benefits.

## A.   Waiver

The Eighth Circuit has not expressly decided whether a party can raise a waiver theory in an ERISA case.  See <u>Farley v. Benefit Trust Life Ins. Co.</u>, 979 F.2d 653, 659 (8th Cir. 1992) (questioning whether "a waiver of policy provisions could be asserted in an ERISA case" but noting that such a question is "a point we do not

---

[3]  "Benefits" is defined as the "right to payment for Covered Health Services that are available under the Policy."  Defs.' Ex. A, at 64.

decide"). Other circuits have concluded that ERISA "does not incorporate the principles of waiver," and even if it did, ERISA does not allow for waiver through routine conduct. White v. Provident Life & Acc. Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997); see also Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1348 (11th Cir. 1994) (stating that defendant's routine conduct did not constitute waiver because there was no evidence of "intentional relinquishment"); Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 648-49 (7th Cir. 1993) (rejecting plaintiff's attempt to assert a "something-for-nothing kind of waiver" because waiver is the "voluntary and intentional relinquishment" of a known right). Even if waiver of a Plan provision could be asserted in an ERISA case, a point the court does not decide, such waiver must be "a voluntary and intentional relinquishment of a known right" Farley, 979 F.2d at 659 (citation and internal quotation marks omitted).

Podiatric cannot meet that standard through United's routine, ministerial conduct as presented here. Specifically, United did nothing to evince an intent to waive the non-assignment clauses. Indeed, the Byram and Diageo Plans expressly state that United may directly engage in routine conduct with providers such as remitting payment and sending correspondence. See Defs.' Ex. A, at 43 ("[United may] pay a non-Network provider directly for services rendered to you."); id. Ex. B, at 44 (listing the ways that United can communicate and coordinate with providers). Under these

7

circumstances, the court cannot conclude that United waived the non-assignment clauses as a matter of law.

**B.   Assignment of a Cause of Action**

With the non-assignment clauses in effect, Podiatric next argues that the clauses are limited in scope and distinct from the assignments effectuated by Patients A and B.   Specifically, Podiatric argues that the clauses prevent the assignment of benefits, but not the assignment of a cause of action.   In effect, Patients A and B could not assign the right to payment for Covered Services (i.e., benefits), but could assign a legal claim based on United's denial of benefits.   The court agrees.

"[N]othing in ERISA prohibits a plan participant from assigning a cause of action to a health care provider." Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994), abrogated on other grounds by Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966 (8th Cir. 2002).   The plan in Lutheran Medical Center contained a non-assignment clause similar to those in the Byram and Diageo Plans, prohibiting an insured from assigning "his rights or benefits."   25 F.3d at 619.   The Lutheran Medical Center court found that the clause "clearly prohibits assignment of 'rights or benefits' under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits."   Id.   In other words, the Lutheran Medical Center court

8

distinguished the legal claim based on a denial of benefits from the benefits themselves, and found that the non-assignment clause did not prohibit assignment of the legal claim. The court ultimately held that "nothing in the contract precludes a finding that [the health care providers] have standing as assignees." Id.; see also Riverview Health Inst. v. UnitedHealth Group, Inc., No. 15-CV-3064, 2015 WL 9581807, at *1-3 (D. Minn. Dec. 30, 2015) (citing Lutheran Medical Center as binding authority, stating that a non-assignment clause "must be explicit in barring the assignment of causes of action," and finding that the defendant's non-assignment clauses were "clearly insufficient to bar the assignment of a cause of action") (emphasis in original).

Here, the Byram Plan prohibits assignment of an insured's right to payment. The Diageo Plan prohibits assignment of an insured's benefits. Neither of those clauses is broader than the clause considered in Lutheran Medical Center. Accordingly, United's non-assignment clauses do not prohibit assignment of the causes of action. Podiatric obtained valid assignments of the right to pursue a cause of action, and has standing to bring the instant claims.

## III. Exhaustion

United next argues that Podiatric's complaint must be dismissed because Podiatric has not appealed the denials and therefore has not exhausted its administrative remedies. Podiatric

9

responds that an administrative appeal would be futile because United's letters indicate it has adopted a company-wide policy of denying claims for OBS facility fees.

ERISA expressly requires that every employee benefit plan "afford a reasonable opportunity ... for a full and fair review" of each claim denial.  29 U.S.C. § 1133.  "Before filing in federal court ... a claimant must exhaust the administrative remedies required under the particular ERISA plan."  <u>Angevine v. Anheuser-Busch Companies Pension Plan</u>, 646 F.3d 1034, 1037 (8th Cir. 2011); <u>see also</u> <u>Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan</u>, 111 F.3d 67, 68 (8th Cir. 1997) ("Federal courts applying ERISA have uniformly concluded that benefit claimants must exhaust the review procedures mandated by 29 U.S.C. § 1133(2) before bringing claims for wrongful denial to court.").

Courts excuse the exhaustion requirement "only when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue."  <u>Angevine</u>, 646 F.3d at 1037. "The futility exception is narrow - the plan participant must show that it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision."  <u>Id.</u> at 1038.  Prospective correspondence outlining company policies on benefit eligibility does not establish futility.  <u>Id.</u>  Even when that prospective correspondence is coupled with an initial denial of benefits, courts still require

10

plaintiffs to pursue administrative remedies.  See Jump v. Speedway LLC, 23 F. Supp. 3d 1024, 1032 (D. Minn. 2014) (stating that the futility exception was not met where the plaintiff received prospective correspondence on benefit eligibility, the defendant told the plaintiff he was not eligible for benefits, and the plaintiff did not pursue further administrative remedies).

In Angevine, the defendants sent an email to all salaried employees, including the plaintiff, captioned "Frequently Asked Questions," with answers prospectively indicating that the plaintiff would be denied certain benefits.  Id. at 1036-37; see Angevine v. Anheuser-Busch Companies Pension Plan, No. 4:09-CV-1959, 2010 WL 2835722, at *3 (E.D. Mo. July 16, 2010) (detailing the nature and contents of the email).  Without submitting a claim or an appeal, the plaintiff filed an ERISA class action under the same statute as Podiatric.  Angevine, 646 F.3d at 1037.  The court dismissed the case, stating, "Even if the email provides some indication of the position the Plan administrator would take if Angevine had pursued an administrative remedy, it does not show with certainty that the Plan administrator would have denied Angevine's claim ... upon either initial review or appeal." Id. at 1038.

Similarly here, Podiatric received prospective correspondence from United indicating that specific types of claims would be denied, but did not pursue administrative remedies.  Podiatric

notes that Angevine can be distinguished because that plaintiff did not file a claim.  However, the Angevine court indicated that both initial review and appeal were relevant to satisfying the futility exception.  Id. at 1038.  The facts of Jump closely follow Angevine and go even further to show that an initial denial of benefits after prospective correspondence still does not satisfy the futility exception.  Jump, 23 F. Supp. 3d at 1027-28.  There, the plaintiff not only received prospective correspondence outlining benefits eligibility, but also was specifically told by the defendant that he was not eligible for benefits.  Id.  In both Angevine and Jump, the court found that the plaintiff had not satisfied the futility exception.

Moreover, every letter that United sent to Podiatric invites appeal and provides detailed instructions about how to appeal. Courts have found that plaintiffs do not satisfy the futility exception where a defendant invites appeal of its decision.  See Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677 (7th Cir. 2002) (finding that the plaintiff had not established futility even after initial denial and first appeal, where appellate denial invited a second appeal).  Here, Podiatric has yet to file any appeal challenging the denial.

Under these circumstances, Podiatric has failed to establish that pursuing administrative remedies would be futile.  As a result, Podiatric must exhaust those remedies before it may bring

a claim in federal court.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.    The motion to dismiss [ECF No. 16] is granted; and

2.    The case is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  January 11, 2016


                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court